UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRAIDAN COY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-cv-01920-JPH-KMB ) |
| YARBER Lt., et al., | ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Braidan Coy, a prisoner currently incarcerated at Pendleton Correctional Facility filed this action alleging that Sgt. Ivy and Lt. Yarber violated his Eighth Amendment rights while he was incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). The defendants have moved for summary judgment. For the reasons below, that motion, dkt. [69], is **GRANTED**.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility

1

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Coy and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

**A. The Parties**

At all relevant times, Mr. Coy was an inmate at Wabash Valley within the Secured Confinement Unit ("SCU"). Dkt. 70-1 at 10.

Defendant Phillip Ivy was a Sergeant at Wabash Valley. Dkt. 70-2 at 1. Richard Yarber was a lieutenant at Wabash Valley who supervised the SCU. Dkt. 70-3 at 1.

### B. The Incident

On July 14, 2023, at 2:32 P.M. Sgt. Ivy responded to an emergency signal on Mr. Coy's range at Wabash Valley. Dkt. 70-2 at 1; dkt. 70-4 at 1:06-1:50.

When Sgt. Ivy arrived, a non-party officer told him that an inmate named Henderson on the first floor of the range had used his cup to throw toilet water. Dkt. 70-2 at 1. Sgt. Ivy gave the inmate an order to submit to wrist restraints, but Mr. Henderson refused. Dkt 70-2 at 2. Shortly thereafter, Sgt. Ivy returned with a cannister of MK-9 OC streamer and again requested that Mr. Henderson comply with restraints, but he refused to do so. *Id.*

Video evidence of the incident shows Sgt. Ivy communicating with Mr. Henderson through the door of the cell and placing the nozzle of the OC streamer through the door for approximately 4-5 seconds. Dkt. 70-4 at 5:21-5:25. Mr. Henderson then attempted to throw toilet water on Sgt. Ivy. Dkt. 70-2 at 2, dkt. 70-4 at 5:40-5:52.

Mr. Coy was housed on the second floor and could not see the first-floor cells from his cell. Dkt. 70-1 at 12-13, 19. After Sgt. Ivy first deployed the spray, Mr. Coy asked either Sgt. Ivy or another officer for a fan to be brought in

3

to help alleviate the effects of the spray. Dkt. 70-1 at 31. Mr. Coy experienced coughing, choking, shortness of breath, chest burning, tearing up, dizziness, and lightheadedness. Dkt. 70-1 at 30 (Coy Dep. at 30:4-23).

In response, Sgt. Ivy said no, insinuated to the other inmates that they had instigated the altercation with Mr. Henderson, and told Mr. Coy and other inmates "you're gonna act like idiots, we'll treat you like idiots." Dkt. 70-1 at 17. To facilitate air flow, the cell house door to the outside recreation area was opened. Dkt. 70-4 at 6:39-6:45; dkt. 70-2 at 2.

Mr. Henderson continued to throw toilet water on a non-party officer, and Sgt. Ivy then deployed spray for approximately two seconds into his cell. Dkt. 70-4 10:12-10:14. Sgt. Ivy then deployed a series of 20-30 pepper balls into Mr. Henderson's cell after he again refused to submit to restraints. Dkt. 70-4 at 23:00-23:10; dkt. 70-2 at 2. An extraction team then extracted Mr. Henderson from his cell. Dkt. 70-2 at 3.

Lt. Yarber was acting as the manager of the SCU at the time of this incident. Dkt. 70-3 at 1. He was not present when the OC spray and pepper balls were used. *Id.* Although he had been made aware that an inmate was refusing orders, he was not specifically aware of how either the OC spray or pepper balls would be used. *Id.* Lt. Yarber was present after the chemicals were used.

During and after the extraction, Mr. Coy and other inmates attempted to request medical attention due to their exposure to OC spray and pepper balls. Dkt. 70-1 at 15-16. Mr. Coy told Sgt. Ivy and Lt. Yarber that he was

4

experiencing sharp pains in his chest, irritation, coughing, choking, and skin irritation. *Id.* at 35. Both Sgt. Ivy and Lt. Yarber denied Mr. Coy medical help, again making comments like "You guys instigated this shit, you're gonna be treated like idiots, you're not getting medical, nobody's seeing medical, deal with it." *Id.* at 36-37. Mr. Coy had to wait to request help from the night nurse that evening. *Id.*

Mr. Coy testified that Mr. Henderson's cell was not cleaned until four days after the incident, which allowed the effect of the spray and pepper balls to linger on the unit. *Id.* at 44. Mr. Coy requested an IDOC staff member to clean the cell; however, Mr. Coy did not make this request to Sgt. Ivy or Lt. Yarber. Dkt. 70-1 at 46-49, 70-3 at 2.

### C. Mr. Coy's Health Conditions

Mr. Coy had previously suffered from heart palpitations. Dkt 70-1 at 33. Sgt. Ivy and Lt. Yarber were not aware of Mr. Coy's previous health conditions. *Id.* at 37. After the incident, Mr. Coy saw a nurse who described his symptoms as those of a panic attack. *Id.* at 35.

### III. Discussion

Mr. Coy brings claims under the Eighth Amendment, alleging that he was subjected to excessive force; that the defendants were deliberately indifferent to his need for medical care; and that the defendants were

5

deliberately indifferent to the conditions of his confinement. Dkt. 8 at 3 (Screening Order). The Court discusses each claim in turn.

### A. Qualified Immunity

The defendants argue that they are entitled to qualified immunity on all of Mr. Coy's claims. "Qualified immunity is a doctrine that protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (cleaned up). Once a defendant raises qualified immunity as a defense, the burden shifts to the plaintiff to defeat it by showing "two elements: first, that the facts show a violation of a constitutional right, and second, that the constitutional right was clearly established at the time of the alleged violation." *Id.* (cleaned up). "'If *either* inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (quoting *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (emphasis in original)). The Court can consider the elements in either order. *Id.*

State correctional officers are immune from liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104, (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam)). For a "law to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Smith v. Kind*, 140 F.4th 359, 369 (7th Cir. 2025).

6

### 1. Excessive Force Claims

As to Mr. Coy's excessive force claim, the Court considers the second qualified immunity element—was the constitutional right clearly established at the time of the violation. Mr. Coy must show that Sgt. Ivy violated the clearly established constitutional rights of the inmate on the first floor of the range by using pepper spray and then pepper balls to get that inmate to comply with orders so he could be extracted from his cell. *Id.* at 369-70; *Lindsey v. Boughton*, No. 17-cv-52-jdp, 2018 U.S. Dist. LEXIS 135459, at *12 (W.D. Wis. Aug. 10, 2018) ("Bystander exposure to pepper spray is analyzed under the same [excessive force] legal test.").

In *Smith,* the Seventh Circuit explained that it and other circuit courts had previously "sanctioned the use of pepper spray on noncompliant inmates." *Smith*, 140 F.4th at 369. The Court further stated that, "[e]specially in excessive force cases, where 'it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts,' correctional officers are entitled to qualified immunity 'unless existing precedent 'squarely governs' the *specific* facts at issue.'" *Id.* at 370 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015)) (emphasis in *Smith*). The Court applied those principles to a situation where an officer, who knew that the inmate had a medical contraindication to pepper spray, used pepper spray on the inmate anyway after the inmate did not comply with an order to come to the cell door. *Id.* at 362-363. The pepper spray left the inmate "gasping for air", "drooling, coughing, spitting, and moaning", and disorientated for about

7

eight minutes. *Id.* at 363. The Court held that "[w]hile a close call, we do not view Smith's account of what transpired here, though very concerning, as falling within that narrow category of cases where the constitutional violation is so severe and blatant as to be obvious." *Id.* at 370. The Court determined that it therefore could not "conclude that a reasonable correctional officer would have known that using pepper spray to extract [the inmate] from his cell violated the Eighth Amendment." *Id.*

Considering Seventh Circuit precedent allowing officers to deploy pepper spray on non-compliant inmates, Mr. Coy has not shown that Sgt. Ivy's use of pepper spray and pepper balls to gain Mr. Henderson's compliance fell "within that narrow category of cases where the constitutional violation is so severe and blatant as to be obvious." *Id.* at 370. Sgt. Ivy is therefore entitled to summary judgment on the basis of qualified immunity because it was not clearly established that Sgt. Ivy's use of pepper spray was excessive.

As to Sgt. Yarber, the analysis is even simpler. "Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Because there is no evidence that Sgt. Yarber was involved in the use of force, he is entitled to summary judgment on this claim.

### 2. Medical Deliberate Indifference

Defendants next argue that they are entitled to qualified immunity on Mr. Coy's claim that they were deliberately indifferent to the serious medical condition when he experienced from second-hand exposure to pepper spray. This

8

claim can be resolved on the first element—that the facts do not show a violation of a constitutional right.

The Eighth Amendment imposes a duty on prison officials "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez,* 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Mr. Coy argues that because he suffered from serious side effects from the pepper spray and the Defendants refused him care when he had a chronic condition, their actions rise to the level of deliberate indifference. Dkt. 76 at 7-8. Exposure to OC spray may result in a serious medical condition that implicates the Eighth Amendment; it is a fact-intensive inquiry. *Hughes v. Durrent*, 2017 WL 3978702 at *9-*12 (N.D. Ill. 2017) (collecting and discussing cases). However, "courts have routinely held that the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions." *Woodward v. Tierney*, No. 2:21-cv-00472- JPH-MKK, 2023 U.S. Dist. LEXIS 147921, at *9 (S.D. Ind. Aug. 23, 2023) (quoting *Stone v. Couch*, No. 1:19-

9

cv-01193-TWP-DML, 2021 U.S. Dist. LEXIS 177289, 2021 WL 4247870, at *6 (S.D. Ind. Sept. 17, 2021)).

In *McCloud v. Vanschoyck*, No. 2:21-cv-00429-JPH-MKK, 2024 WL 229740, at *7 (S.D. Ind. Jan. 19, 2024), this Court held that analyzing whether the effects of pepper spray rise to the level of deliberate indifference is a fact-intensive inquiry. In that case, the plaintiff was sprayed directly by officers and was not allowed to shower for days. *Id.* But here, Mr. Coy's exposure was merely second-hand unlike the plaintiff in *McCloud*, and Mr. Coy had a sink in his cell where he could wash off the residual exposure to avoid further pain. Dkt. 70-1 at 54. With these facts, Mr. Coy has not proven that his exposure rose to the level of objective seriousness. Summary judgment must be granted for the defendants.

### 3. Conditions of Confinement

Likewise, the Court resolves the conditions of confinement claim on the first element, that there was no violation of Mr. Coy's Eighth Amendment rights.

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Just like a deliberate indifference claim related to serious medical needs, a conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his

10

health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind—that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

  Mr. Coy argues that by failing to clean the inmate's cell after the extraction incident and opening the door to the cellblock rather than utilizing fans, the defendants subjected him to inhumane conditions. Dkt. 76 at 8-9. Mr. Coy contends that the defendants knew that heat intensified the effects of the chemical agents, so the remedial measure of opening the door to the cell block was ineffective and in fact, malicious. *Id.* However, Mr. Coy was subjected to these conditions for a relatively short period of time—four days total of exposure to residual spray within the same cellblock. Dkt. 70-1 at 44. Additionally, this exposure was indirect. Even taking into account Mr. Coy's argument that the heat may have exacerbated the effects of the spray, this does not rise to the level of objectively serious conditions.

  Not every exposure to a potential environmental hazard in prison amounts to a violation of the Eighth Amendment. *See Carroll v. DeTella,* 255 F.3d 470, 473 (7th Cir. 2001) ("[F]ailing to provide a maximally safe

11

environment, one completely free from pollution or safety hazards, is not [cruel and unusual punishment]."); *see also McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993) (inmate's exposure to moderate levels of environmental contaminants did not violate the Eighth Amendment, because such exposure "is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual"); *see Vasquez v. Frank*, 290 F. App'x 927, 929 (7th Cir. 2008) (inmate alleging excessively high temperatures, poor ventilation, and constant illumination in his cell did not allege sufficient duration to constitute as cruel and unusual); *see Green v. Walker*, 398 F. App'x 166, 169 (7th Cir. 2010) (summary judgment granted for defendants where inmate was subjected to high temperatures within his cell, but he only alleged that he was subjected to these conditions for one summer). No reasonable juror could find that Sgt. Ivy or Lt. Yarber subjected Mr. Coy to inhumane conditions of confinement. Accordingly, Mr. Coy has not shown a violation of his Eighth Amendment rights, and summary judgment must be granted in their favor.

### B. Objection to Video Evidence

Mr. Coy objects to the video footage of the incident on authentication grounds. Dkt. 76 at 12-13. He alleges that 51 minutes of video footage is missing which evinces that the video was altered to minimize the duration and frequency of MK fogger use. *Id.* at 13. However, the defendants' affidavit supports that the surveillance camera system at Wabash Valley stops recording video footage when the camera does not detect movement. Dkt. 81-1 at 2. Further, they have

12

provided an affidavit authenticating the video evidence at issue. *Id.* Mr. Coy's objection is overruled.

## IV.
## Conclusion

For the reasons stated above, Sgt. Ivy and Lt. Yarber's motion for summary judgment is **GRANTED**. Dkt. [69].

Final judgment consistent with this Order will issue in a separate entry.

Mr. Coy's motion for ruling on summary judgment, dkt. [88], is **GRANTED** to the extent that this Court order provides a ruling on the defendants' summary judgment motion.

**SO ORDERED.**

Date: 9/30/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

BRAIDAN COY
278668
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

All Electronically Registered Counsel